UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LINDA BUTLER,                          )
                                       )   No. CV-08-0153-CI
          Plaintiff,                   )
                                       )   ORDER DENYING PLAINTIFF'S
v.                                     )   MOTION FOR SUMMARY JUDGMENT
                                       )   AND GRANTING DEFENDANT'S
MICHAEL J. ASTRUE, Commissioner        )   MOTION FOR SUMMARY JUDGMENT
of Social Security,                    )
                                       )
          Defendant.                   )
                                       )

     BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct.
Rec. 13, 19.)  Attorney Rebecca Coufal represents Linda Butler
(Plaintiff); Special Assistant United States Attorney Richard
Rodriquez represents the Commissioner of Social Security
(Defendant).   The parties have consented to proceed before a
magistrate judge. (Ct. Rec. 6.)  After reviewing the administrative
record and briefs filed by the parties, the court **DENIES** Plaintiff's
Motion for Summary Judgment, and directs entry of judgment for
Defendant.

**JURISDICTION**

     Plaintiff protectively filed for disability benefits (DIB) and
Supplemental Security Income (SSI) on October 6, 2005.  (Tr. 77.)
She alleged disability due to a herniated disc, back and neck pain,
hepatitis C related fatigue, and depression, with an onset date of
August 15, 2005.  (Tr. 69, 96-97.)  Her claim was denied initially
and on reconsideration.  Plaintiff requested a hearing before an

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

administrative law judge (ALJ), which was held on November 6, 2007, before ALJ Hayward C. Reed. (Tr. 347, 368-99.) Plaintiff, who was represented by counsel, and vocational expert Deborah LaPoint (VE) testified. (Tr. 369.) The ALJ denied benefits on January 23, 2008, and the Appeals Council denied review. (Tr. 15-24, 4-6.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. At the time of the hearing, Plaintiff was 52 years old with an 11th grade education and dental assistant certification. (Tr. 372.) Plaintiff has past work experience as a casino hostess, electronics assembler, coin machine service repair person, and gambling cashier. (Tr. 107.)

Plaintiff reported she lived alone, was unmarried, and has three adult children. (Tr. 236.) She reported she was independent in her activities of daily living and personal care. (*Id*.) She testified she could lift 10 pounds, sit for 20-30 minutes, stand for 15 to 20 minutes, walk for 30 minutes, and sit at the computer for short periods of time. She reported she was taking an on-line university correspondence course from a seminary school. (Tr. 378-79.) She testified she was terminated from her last job in 2005 for not following company rules. (Tr. 103, 375-76.) She stated she could no longer work due to pain and fatigue. (Tr. 373.)

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff's date of last insured for DIB purposes will be December 31, 2010. (Tr. 15.) At step one, ALJ Reed found Plaintiff had not engaged in substantial gainful activity since the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

alleged onset date.  (Tr. 17.)  At step two, he found Plaintiff had severe impairments of "degenerative disk disease of the cervical and lumbar regions of the spine." (*Id.*)    He concluded diagnosed hepatitis C and mental impairments did not pose more than minimal limitations on Plaintiff's ability to do work activities for at least 12 continuous months and, therefore, they were not severe impairments.  (Tr. 17-18.)   The ALJ determined at step three the impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings).  (Tr. 20.)   The ALJ found Plaintiff's statements regarding her symptoms and limitations were "not entirely credible to the extent that [they] would preclude all work."  (Tr. 22.)   At step four, he determined Plaintiff could perform light work, including her past relevant work as a casino coin machine repairer, cashier and hostess, as generally and actually performed.  (Tr. 23.) He found Plaintiff was not under a "disability" as defined by the Social Security Act at any time through the date of his decision.  (Tr. 27.)

### STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo. Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more

than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he: (1) found her hepatitis C and mental impairments were not severe; (2) rejected the opinions of examining psychologist Mahlon Dalley, Ph.D.; (3) assessed her credibility and pain complaints; and (4) failed to include all her limitations in the hypothetical questions posed to the VE. (Ct. Rec. 14 at 10-19.)

**DISCUSSION**

**A.    Credibility**

Plaintiff argues the ALJ's credibility findings were not sufficient to reject her pain testimony. (Ct. Rec. 14 at 15.) When the ALJ finds a claimant's statements as to the severity of

impairments, pain and limitations are not credible, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's allegations. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's allegations regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment, or combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986). Once the *Cotton* test is met, the ALJ must evaluate the credibility of the claimant. In addition to ordinary techniques of credibility evaluation, the ALJ may consider the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness; inconsistencies either in her allegations of limitations or between her statements and conduct; daily activities and work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Fair v. Bowen*, 885 F.2d 597 n.5 (9th Cir. 1989). The ALJ may also consider an unexplained

failure to follow treatment recommendations and testimony by the claimant "that appears less than candid." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  If the ALJ's credibility finding is supported by substantial evidence in the record, "the court may not engage in second-guessing." *Thomas*, 278 F.3d at 959; *Fair*, 885 F.2d at 604 ("credibility determinations are the province of the ALJ").

The ALJ thoroughly summarized the medical evidence and Plaintiff's testimony relevant to the period during which Plaintiff was insured.  He specifically noted Plaintiff's testimony that she could no longer work due to neck and low back pain.  (Tr. 21.)

> An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423 (d)(5)(A). . . . This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain; many medical conditions produce pain not severe enough to preclude gainful employment.

*Fair*, 885 F.2d at 603.  Although an adjudicator may not reject a claimant's extreme symptom complaints solely on a lack of objective medical evidence, the medical evidence is a relevant factor to consider.  *Social Security Ruling* (*SSR*) 96-7p.

Here, the ALJ found the objective medical evidence did not support Plaintiff's allegations of disabling pain.  Referencing medical reports, he found MRI results revealed no cord compression, and neurological findings revealed symmetrical coordination, strength and reflexes, intact sensation, no muscle atrophy, and no report of radicular symptoms.  (Tr. 22.)  He noted Plaintiff was never a candidate for surgical intervention, and no treating medical provider opined she was totally disabled.  (*Id.*)  These findings

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

are supported by substantial evidence, cited in his decision.

Significantly, clinic records indicate Plaintiff rarely sought services when visiting the doctor.  She reported acceptable pain levels at times (even when laboratory results indicated non-compliance with dosage prescribed), had normal exams, and primarily requested prescription refills at her appointments.  (*See e.g.*, Tr. 116, 161, 164, 168, 179, 182, 201, 206-07, 212, 216.)  In December 2005, her treatment provider opined her back condition limited her to light level work with "proper therapy," and noted her most limiting condition was hepatitis C fatigue.  (Tr. 139.)  At the time she was also taking narcotics pain medication and muscle relaxants under a medication management contract.  (Tr. 134-36.)

In addition to a lack of objective medical evidence to support a finding of disabling symptoms, the ALJ gave other "clear and convincing" reasons for his credibility findings.  He referenced Plaintiff's testimony that she left her last job for "reasons unrelated to disability," that she had performed well at her job and required no special accommodation for her back or neck.  (Tr. 21.) The ALJ noted Plaintiff's history of conservative and effective medical treatment, and found reports of her positive response to medication, physical therapy and home exercise were inconsistent with her allegations of disabling back pain.  (Tr. 21.)  He also reasoned she was capable of independent living and participated in a variety of activities of daily living and she was taking college courses on line, regularly socializing and attending church.  (Tr. 21-22.)  These are specific, "clear and convincing" reasons to support adverse credibility findings.  *Tommasetti*, 533 F.3d at 1040.

Finally, the ALJ referenced reports from Plaintiff's treatment

providers that she was discharged from their care due to misuse of her narcotic prescriptions. (Tr. 13.) A claimant's inconsistencies about substance abuse support an adverse credibility findings. *See, e.g., Thomas*, 278 F.3d at 959; *see also Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999). As noted by the ALJ, Plaintiff insisted she was taking her pain medication as directed, (Tr. 19), and during hearing testimony she denied being prescribed narcotics other than methadone. (Tr. 383.) However the medical records and the psychological evaluations from 2005 through 2007 report muscle relaxants and pain killers as being prescribed and monitored consistently. Specifically, treating nurse practitioners at two clinics recorded their concerns regarding drug misuse.

The record includes her 2005 medication management contract with the Community Health Association of Spokane (CHAS) which lists her medication as methadone (one every 6 hours), Lorazepam (one a day) and Soma (three per day). (Tr. 134-36.) In August 2006, the CHAS treatment provider met with Plaintiff to discuss his concerns regarding prescription misuse, at which time she terminated the contract and service was discontinued. (Tr. 182-83.) Plaintiff testified she canceled the medication contract because her treatment provider threatened her about her medication. (Tr. 382.)

She resumed treatment at People's Clinic in August or September 2006, at which time the treatment provider recorded her medications as Soma, methadone, Lorazepam. (Tr. 195.) In January 2007, nurse practitioner Sandy Forsman reported Plaintiff was narcotic dependent and needed to wean off high levels of medication for her "mild spine disease," which recent MRI's indicated was improving. (Tr. 198.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

At that time Plaintiff was prescribed Lorazepam, methadone and Soma. A July 2007 note from Nurse Forsman indicates Plaintiff came in for prescription refills, but her blood tests were negative for opiates and benzodiazepines, she had run out of methadone two days early, and the prescribed Lorazepam had addictive potential and street value. (Tr. 214.) On August 16, 2007, Nurse Forsman reported Plaintiff was not taking the medications as directed and refused to give her Lorazepam. She prescribed methadone and Soma. (Tr. 216. Plaintiff was discharged from the clinic that day. (*Id.*) However, at the hearing Plaintiff asserted she was not prescribed or using Lorazepam, and the laboratory tests were wrong. (Tr. 383.)

The record also shows Plaintiff attended mental health counseling sessions from April to September 2007. The discharge report from Catholic Charities indicates Plaintiff's progress was minimal after three sessions, and she was "primarily seeking pain killers/lorazepam." (Tr. 327.) The ALJ reasonably considered these inconsistencies between Plaintiff's statements, observations of treatment providers, and the clinical records as a basis for his adverse credibility findings.[1] The documented concerns about drug misuse from Plaintiff's two primary treatment providers and her mental health counselor constitute substantial evidence to support the ALJ's credibility findings.

The ALJ did not err in discounting Plaintiff's subjective

---

[1] It is noted on independent review that emergency room records submitted November 1, 2007, indicate Plaintiff visited at three hospitals between September and November 2007, seeking pain medication for back and neck pain. (Tr. 341-45, 354-63.)

complaints and medical source opinions based on her unreliable self-report. The evidence in its entirety was rationally interpreted to support a finding that the severity and intensity of Plaintiff's pain and limitation complaints are not credible.

**B.    Step Two**

Plaintiff argues the ALJ erred when he found her diagnosed hepatitis C and pain disorder were not severe. (Ct. Rec. 14 at 11.) She asserts her subjective symptom complaints are sufficient to establish severity, and also argues the ALJ improperly rejected Dr. Dalley's assessment of marked limitations which, if credited, would support a finding of severe pain disorder.

At step two of the sequential evaluation, the ALJ determines whether Plaintiff suffers from a "severe" impairment, *i.e.,* one which has more than a slight effect on the claimant's ability to work. To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20. C.F.R. §§ 404.1529, 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of pain. *Bunnell,* 947 F.2d at 345.

The Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be

found to be not severe *only* when evidence establishes a "slight abnormality" on an individual's ability to work. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*citing SSR* 85-28).  The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims.  *Bowen v. Yuckert*, 482 U.S. 137, 153-154.  A mental impairment generally is considered non-severe for purposes of step two if the degree of limitation in the three functional areas of activities of daily living, social functioning, and concentration, persistence or pace is rated as "none" or "mild" and there have been no episodes of decompensation.  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

In determining whether a claimant has a severe impairment, the ALJ evaluates the medical evidence submitted and must explain the weight given to the opinions of accepted medical sources in the record.  The regulations distinguish among the opinions of three types of accepted medical sources: (1) sources who have treated the claimant; (2) sources who have examined the claimant; and (3) sources who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records.  20 C.F.R. §§ 404.1527, 416.927.  A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining reviewing or consulting physician's opinion.  *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004);  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), "As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830 (citation omitted).

If the opinion is contradicted, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews,* 53 F.3d at 1043. The testimony of a non-examining medical expert by itself cannot be considered substantial evidence that supports the rejection of an examining physician. *Lester*, 81 F.3d at 831. Nurse practitioners and mental health therapists acting independently are not "acceptable medical sources" under the Regulations; however, as "other sources," their opinions as to the effects of impairments on a claimant's ability to work must be considered and the weight given explained. 20 C.F.R. § 404.1513(d); 416.913(d).

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

1.    Dr. Dalley's Psychological Evaluation

Plaintiff argues assessments of "marked" limitations by examining psychologist Mahlon Dalley, Ph.D., were not properly rejected and are sufficient to establish a severe mental impairment at step two. (Ct. Rec. 14 at 11.) Plaintiff was evaluated in November 2006, and May 2007; at both evaluations objective psychological testing was administered. (Tr. 244-52, 259-68.) The clinical assessments were conducted by Abigail Osborne-Elmer, M.S., (Licensed Mental Health Counselor) and authorized and adopted by Dr.

Dalley. (Tr. 252, 268.)  Pain disorder, NOS, was diagnosed in 2006, with markedly severe pain complaints, and marked functional limitations in her ability to relate appropriately to co-workers and supervisors and tolerate pressures and expectation of a normal work setting. (Tr. 245-46.)   In 2007, pain disorder and borderline intellectual functioning were diagnosed.  Marked limitations were noted in the same areas as in 2006.  (Tr. 260-61.) In 2006, Plaintiff reported taking Soma, methadone and Lorazepam; in 2007, she reported taking Soma and methadone.  (Tr. 248, 263.)

Although the ALJ did not reject the Elmer/Dalley finding that Plaintiff tested in the borderline to low average intellect range, he concluded the evidence in its entirety showed her IQ level did not pose more than minimal limitations on her ability to do work-related activities. (Tr. 19.) As the Ninth Circuit has emphasized, the ALJ is not required to recite specific words in rejecting medical opinions. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989.)  On review, the court can read the adjudicator's summary of the evidence and draw inferences. *Id.*  Here, in his summary of the psychologists' reports at step two, the ALJ referenced test results and observations by the clinician that were inconsistent with a finding of more than a "mild" mental limitation.  Specifically he noted Trails A and B test scores in the normal to mild impairment range, and the "mild to moderate" results of her Mini-Mental Status Examination, all of which indicated she was able to think abstractly, had an average mental control and fund of general information and was not delusional. (Tr. 18.)  He also summarized evidence of Plaintiff's independent daily activities, on-line university course work at a seminary school, regular socialization

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

at church and with friends, and past work at skilled and semi-skilled jobs.  (Tr. 18-19, 22, 107, 264-68, 379.)  From these detailed summaries, the court can draw inferences consistent with the ALJ rejection of Dr. Dalley's assessment of "moderate to marked" limitations in mental functioning.  Further, at step four, the ALJ specifically rejected the functional limitations on Dr. Dalley's form report as "inconsistent with the results of psychological testing, including testing performed by Dr. Dalley himself in November of 2006 and May of 2007," which were fully discussed at step two.  Finally, credibility is a proper factor to consider when evaluating medical evidence. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).  As discussed above, the ALJ properly discounted Plaintiff's self-reported disabling symptoms.  The record in its entirety supports the ALJ's rejection of Dr. Dalley's conclusions that Plaintiff's mental function caused more than mild limitations in her ability to perform work activities.

 2.  Duty to Develop Record

 Plaintiff also argues that without medical expert testimony and consultative examinations purchased by the Commissioner, the ALJ's step two and credibility findings are not supported by substantial evidence.  She asserts remand is necessary to develop the record. (Ct. Rec. 14 at 13-14.)

 Although it is within the ALJ's discretion to develop the record if he determines additional evidence (including medical expert testimony) is necessary to resolve a conflict or clear up any ambiguity in the record, the decision to call a medical expert for additional evidence on the nature and severity of impairments is required only "[w]hen . . . in the opinion of the [ALJ] or the

Appeals Council the symptoms, signs and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *SSR* 96-6p.   Here, the medical records do not suggest reasonably that Plaintiff meets a Listing, and she offers no plausible theory of equivalency. *See Sullivan v. Zebly*, 493 U.S. 521, 530-31 (1990).  Further, the fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social Security regulations. *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).  As discussed above, the ALJ reasonably rejected the alleged severity of Plaintiff's subjective symptom and pain complaints, after finding them inconsistent with her level of daily activity and not entirely credible.   In addition, the ALJ found Plaintiff did not require treatment for hepatitis, and tests did not reveal impaired liver function.   Indeed, records from CHAS medical clinic detail symptoms and tests run to assess her hepatitis C.  Liver function tests were "close to normal" over the years, and Plaintiff reported never having significant abdominal pain or bloating, jaundice, bleeding. She did report "troubling fatigue" when she was working four ten-hour days, and fatigue that persisted after she stopped working. (Tr. 123.)  In September 2006, when she started at People's Clinic, she reported no hepatitis-related fatigue.   (Tr. 194.)   At the hearing, Plaintiff reported she had no hepatitis symptoms except fatigue. (Tr. 378.)  The ALJ properly considered her self-reported daily activities (including doing her household chores, cooking, shopping, taking on-line classes, visiting with friends, and

attending church) and factored them into his evaluation and conclusion that Plaintiff did not meet her burden to show hepatitis caused more than minimal effect on her ability to work. (Tr. 22.) The evidence is neither ambiguous nor inadequate for a reasonable evaluation of equivalence. The ALJ was not obliged to call a medical expert where, as here, there is no issue of Listing equivalence.

Regarding the need for an agency purchased consultative examination, the Commissioner has "broad latitude in ordering a consultative examination." *Diaz v. Secretary of Health and Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). Consultative exams are purchased to resolve conflicts or ambiguities "if one exists." 20 C.F.R. § 404.1519a(a)(2). However, there must be sufficient objective evidence in the record to suggest the "existence of a condition which could have a material impact on the disability decision." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). Here, the ALJ properly rejected the severe mental limitations assessed in the Elmer/Dalley form report as inconsistent with the narrative psychological evaluation, results from objective testing, and other evidence in the record. The record supports the ALJ's "clear and convincing" reasons, including Plaintiff's own statements to her mental health provider that her bouts of depression were "time-limited," and occurred monthly for about three days, that she did not want to attend counseling unless they could help her get pain medication, and that the only reason she attended counseling was to satisfy state agency requirements. (Tr. 264-67, 317, 331, 337.) Plaintiff has failed to present evidence to suggest her mental condition had a material impact on the ALJ's disability

determination; therefore, the ALJ's reasonably determined a consultative examination was not warranted.

The ALJ did not err when he found Plaintiff's hepatitis C and mental disorders did not cause more than minimal effect on her ability to do work activities.  His step two findings are supported by substantial evidence.

**C.    Hypothetical Question**

Plaintiff contends the ALJ erred by presenting an incomplete hypothetical to the VE.  (Ct. Rec. 14 at 17-19.)  Based on hypothetical questions posed by the ALJ, the VE testified Plaintiff could perform her past relevant work as a casino coin machine repairer, electronic assembler, casino cashier and hostess, classified as light work as described and performed by Plaintiff. (Tr.  107, 391-92, 394, 397-98.)

The ALJ may rely on vocational expert testimony if the hypothetical presented to the expert includes all functional limitations supported by the record and found credible by the ALJ. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In his first hypothetical, the ALJ included all exertional limitations supported by the medical record and Plaintiff's credible testimony. Plaintiff asserts the ALJ should have included "sedentary limitations noted in the DSHS physical capacity evaluations done for GAU/GAX."  (Ct. Rec. 14 at 18.)  However, the ALJ specifically rejected these limitations as (1) inconsistent with the record in its entirety, including MRI reports, and (2) based on Plaintiff's unreliable self-report.  (Tr. 23.)  These are legally sufficient reasons to reject the opinions of nurse practitioners working independent of an acceptable medical source.  *See Gomez v. Chater*,

74 F.3d 967, 971 (9ᵗʰ Cir. 1996). Further, the final determination regarding Plaintiff's ability to perform basic work is the sole responsibility of the Commissioner, and no special significance is given to a medical source opinion on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), .1546, 416.927(e), .946; *SSR* 96-5p.

In a third hypothetical,[2] the ALJ added the following non-exertional limitations reflected in Dr. James Bailey's narrative psychological evaluation:[3]

> [S]low, psycho motor speed and digit symbol and poor calculation, arithmetic and poor matrix reasoning which

---

[2] The ALJ's second hypothetical assumed Plaintiff's testimony was entirely credible; the VE opined her complaints precluded work. (Tr. 394-95.)

[3] The court notes on independent review that in a June 2006, psychological evaluation check box form, Dr. Bailey assessed two "marked" limitations: (1) "ability to perform routine tasks," and (2) "ability to respond appropriately to and tolerate the pressures and expectations of normal work setting," but indicated these were not expected to last more than 12 months. (Tr. 233-34.) *See* 20 C.F.R. §§ 404.1509, 416.909 (an impairment is not disabling unless it is expected to result in death or last for a continuous period of at least 12 months). In May of 2007, Dr. Dalley identified only the second limitation assessed by Dr. Bailey as still existing. (Tr. 261.) As discussed above, the ALJ properly rejected this degree of severity as inconsistent with the objective testing (overall performance in the low average range) and the record in its entirety. (Tr. 23, 261, 266.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

were scores of the lower end of test results in WAIS III are likely due to the effects of narcotic like medication.

Otherwise [Dr. Bailey] stated activities of daily living mostly independent.  Socially she relates very – fairly well and is well groomed.  Concentration and pace were limited by what I just referred to as slow psycho motor speed and poor calculation as well as some limitations and non-verbal reasoning as seen in the matrix reasoning.

(Tr. 397.)

The VE opined these mental limitations (even with the effects of pain medication) would cause minimal effect on her ability to do the past work described, specifically noting that concentration, persistence and pace were not limited by the effects of narcotics. (Tr. 397-98.)  In response to questioning by Plaintiff's counsel, the VE stated it was not unusual for people in the workplace to "have to deal with the side effects of pain medication."   (Tr. 398.)   Therefore, Dr. Bailey's observations regarding the effects of narcotic medication on Plaintiff's mental capacity to perform work were considered by the VE and addressed by the ALJ in his step four findings.  (Tr. 23.)

Because the ALJ was not required to include properly rejected limitations assessed by Dr. Dalley and Plaintiff's treatment providers, the hypotheticals relied upon by the VE reflect limitations supported by the record and credible testimony.   In addition, limitations due to pain and medication, were presented in the hypothetical.   Therefore, the ALJ's findings at step four are based on substantial evidence, and free of legal error.  *See Parra v. Astrue*, 481 F.3d 742, 750 (9ᵗʰ Cir. 2007), *cert denied* 128 S.Ct. 1068 (2008).

**CONCLUSION**

The ALJ thoroughly detailed the medical evidence in the record and properly evaluated medical source opinions.  He properly assessed Plaintiff's ability to perform work activities.  His detailed credibility findings are "clear and convincing."  His determination of non-disability is based on substantial evidence and free of legal error.  Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED;**

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 19)** is **GRANTED;**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant, and the file shall be **CLOSED.**

DATED April 24, 2009.


                        S/ CYNTHIA IMBROGNO
                    UNITED STATES MAGISTRATE JUDGE